922 So.2d 405 (2006)
J.I., the Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D05-3921.
District Court of Appeal of Florida, Fourth District.
March 8, 2006.
Frank A. Kreidler, Lake Worth, for appellant.
Jeffrey Dana Gillen, West Palm Beach, for appellee.
*406 WARNER, J.
In challenging the order terminating his parental rights, appellant makes the claim that the Department of Children and Families' permanency staffing meeting conducted in this case was subject to the Sunshine Law, and the failure to notify the public, appellant, and his attorney of such meeting violated the statute. We hold that the Sunshine Law does not apply to permanency staffing meetings conducted by the DCF to determine whether to file a petition to terminate parental rights. We therefore affirm.
In 2003 DCF filed a dependency petition to declare appellant's child, S.I., dependent. The trial court entered an order declaring S.I. dependent, and S.I.'s parents received a case plan. Nearly a year later, DCF staff held a permanency staffing meeting with the involved members of the agency, and they determined that DCF would file a petition for termination of parental rights of both the mother and father, the appellant here. The petition was filed a few days later.
When appellant answered the petition, he alleged that the staffing meeting violated the Sunshine Law because reasonable notice of the meeting was not given, nor was it open to the public. The trial court conducted a final evidentiary hearing and terminated appellant's parental rights, implicitly rejecting appellant's claim. This appeal followed.
Section 286.011(1), Florida Statutes, provides:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.
Florida Administrative Code Rule 65C-13.020 governs permanency staffings. Rule 65C-13.020(1) provides as follows:
The department must make every effort to achieve a safe permanent home for each foster child within 12 months of the foster care placement or within 18 months of removal, whichever comes first. The permanency staffing is a primary component in achieving this goal. The problem solving and decision-making necessary to achieve this goal are accomplished best in a group of professionals and interested parties who have access to all the pertinent information concerning the child.
Additionally, rule 65C-13.020(1)(a) provides, in part: "If a child reaches his 11th month from foster care disposition or 17th month from removal, whichever comes first, a permanency staffing must be conducted. The purpose of the staffing is to consider TPR and subsequent adoption as a goal."
In essence, rule 65C-13.020 requires DCF to hold a decision-making permanency staffing for a foster child. Permanency staffings are meetings held to decide what plans should be made to get the child into a safe permanent home as soon as possible. See Fla. Admin. Code R. 65C-13.020(1). The purpose of this permanency staffing is to consider termination of parental rights and adoption as a goal. Fla. Admin. Code R. 65C-13.020(1)(a). The following individuals will attend the staffing:
(a) Foster care supervisor;
(b) Foster care counselor responsible for the case;
(c) Adoption supervisor;

*407 (d) District program specialist;
(e) Child's foster parent or substitute caretaker;
(f) Guardian ad litem, if one has been appointed; and
(g) Involved professionals and district legal counsel, if available.
Fla. Admin. Code R. 65C-13.020(2). However, all records and proceedings regarding dependency and termination proceedings are confidential and exempt from disclosure. See §§ 39.0132(4) and 39.809(4), Fla. Stat.
The permanency staffing review is not a meeting of a board or commission within the meaning of the Sunshine Law. See Occidental Chem. Co. v. Mayo, 351 So.2d 336 (Fla.1977), receded from on other grounds by Citizens of the State of Fla. v. Beard, 613 So.2d 403 (Fla.1992) (holding that not all meetings of staff of board or commission are necessarily subject to Sunshine Law). No official action is taken at the staffing meeting. The official action is the filing of the petition to terminate parental rights, which is confidential. Thus, for this reason alone, the staffings are not subject to the Sunshine Law.
However, even if the staff was exercising decision-making authority at the staffing meeting as contemplated by the Sunshine Law, sections 39.0132(4) and 39.809(4), when read together, make these meetings confidential and closed to the public. Section 39.809(4), which applies to adjudicatory hearings in termination of parental rights cases, provides that "[a]ll hearings involving termination of parental rights are confidential and closed to the public." Section 39.0132(4)(a) provides that all information obtained in dependency and termination proceedings may not be disclosed to anyone other than the authorized personnel of the court or the department, law enforcement, guardian ad litem, and others entitled under chapter 39 to receive such information. Such information is exempt from disclosure under the public records act.
When the entire statutory scheme is viewed as a whole, the essence of these statutes is to mandate confidentiality in the TPR process under chapter 39. The unambiguous legislative intent is for all information involving the child to be confidential. It would make absolutely no sense to say that the permanency staffing itself is open to the public, but that any information revealed in the meeting is confidential. Such an interpretation would make the meeting impossible to conduct. Accordingly, we reject the application of the Sunshine Law to permanent staffing review proceedings under chapter 39.
Appellant also challenges the sufficiency of the evidence to terminate his rights. After carefully examining the record and his arguments, we conclude that the trial court did not abuse its discretion in ordering termination of appellant's parental rights. He failed to comply with his case plan, even though he recently tried to turn his life around. More importantly, he continued to reside with the child's mother, whose rights have been terminated and who generally has an unwillingness to seek treatment for her substance abuse problems. The court specifically found that the mother poses a danger to the child.
For the foregoing reasons, we affirm.
KLEIN and HAZOURI, JJ., concur.